Our next case today, 2017-1101, Dell v. Acceleron. v. Acceleron, LLC Mr. Meek, am I saying that right? Yes. Very good. Please proceed. Thank you, Your Honor. May it please the Court, I'm Kevin Meek and I represent Dell here today. I'd first like to address Dell's contention that the PTAB committed an error when it used a flawed procedure on remand from a decision of this Court in the first time through Dell v. Acceleron. We contend that it was an error for the PTAB to refuse to substantively address the merits of the evidence that it relied on in its first final written decision to invalidate the one claim at issue today, Claim 3 of the 021 patent. This Court instructed in its first Dell opinion that the PTAB should conduct further appropriate proceedings on remand, but we don't believe that ignoring previously considered evidence was an appropriate proceeding. But doesn't that remand order pretty much leave it up to the Board as to how they're going to handle the proceedings? We're not telling them to take evidence from this particular side. I mean, basically the Court said conduct the proceeding not inconsistent with this. Yes, Your Honor. I do believe that the Dell v. Acceleron first opinion gives the PTAB wide latitude. However, since that time, that opinion has been cited at least eight times to my knowledge, and we do have some clarification, and we believe that those cases have gone further than giving any sort of latitude. But I didn't see, along with Judge Ramos' question, I didn't see the Board, and show me if I'm wrong, as having understood our prior decision to limit them, to not allow them to reconsider HIP if they wanted to. Do you believe that the Board was under the misinterpretation that we were limiting them on remand and not allowing them to consider it? No, Your Honor. I am not saying that the opinion from this Court gave an express limitation. What we are saying is… Or that the Board understood themselves to be limited. Correct, Your Honor. I am not saying that the Board was instructed or directed or compelled in any way by this Court, this Court's order to do that. What I am saying, though, is that the later decisions that have reacted to your opinion in Dell v. Acceleron I have gone farther and said that it is good public policy, it is the correct procedure to not ignore evidence that is already before the Board, and to go further and take additional evidence. So, Your Honor, no, I'm not saying that that opinion, by citing Ariosa, the permissive language in the last two columns of the opinion, it was very clear that the Board had latitude. And it is our position that the Board should have that latitude. The cases, though, I believe divide into two groups. If the Board decides to not consider new elements, so, for example, a petitioner tries to put in new evidence or a new theory of patentability, we believe the Board is fine ignoring that and going forward on a final written decision which does not take into that in consideration. But in other cases, for example, the SAS case or the In Re Nuvasiv cases, the Board was able to take in new information. For example, in Nuvasiv, they pivoted to a new figure in one of the existing references. And in the SAS case, the Board adopted a new claim construction on final written decisions. In those cases, this Court said that the Dell v. Acceleron opinion, the first opinion, requires the Board to go further and to take additional evidence. So in SAS, the Court had a situation in which it was the Board adopting its own claim construction and its final written description, neither party arguing it. And so the general rules, the quite strict, you've got one shot at this each side rules of the Board, weren't in play. We have a case here in which the rules that say you can't, even in the reply, let alone at the oral argument by inference or by implication, introduce some new fact. So we, the Board, would have to do something that in SAS we wouldn't have to do, which is something like waive our normal rules. What did we say in Nuvasiv? In Nuvasiv, the reason I bring up SAS and Nuvasiv is because I believe that we are on all fours with both the law, the policy and the law, but also on the facts. So in SAS Institute v. ComplimentSoft, it's exactly what you said. There was very closely related constructions. They were different by just a few words. And then the Board, in its final written decision, adopted something that was sort of down the middle. This court, by the way, said in its opinion that that was fine. There was nothing wrong for them to do that and they should do that. So in Ray Nuvasiv, somewhat different situation, but it's very similar to what happened in Dell v. Acceleron at the PTAB. In Ray Nuvasiv, there was a reference, the Mickelson reference, was before it was in evidence and record. Figures 18. Exactly. And they pivoted to figure 18 and they said this is a better example. This happened very late in the game. But once again, this court said the PTAB should do that. They should explore that evidence. They should take their own materials. In the Dell v. Acceleron PTAB hearing. What was the language in Nuvasiv? Did it go beyond saying what you cannot do is rely on that without adequate notice to Nuvasiv, I guess it was. Yes. And we therefore order you now to consider that with adequate notice or did, on a matter that is obviously a balance of policies, efficiency versus completeness. Yes. As to which we don't get to make that choice. The agency gets to make the choice, whether it's the PTO or individual board panels. What was the language at the end? I have... One moment, Your Honor. There's actually... We must... Well, the board must, as you say, timely inform the patent owner of the matters. And it must give the patent owner an opportunity for the submission and consideration of facts and arguments. And in doing that, they actually... Where are you reading from, please? I have the Emory Nuvasiv opinion in front of me. Let me find the exact quote. That wasn't a quote you were reading? I need to... There is a... It is quoting the Dell versus Acceleron opinion. So it's what I was... It actually quotes the language. The agency must timely inform the patent owner of the matters of fact and law asserted, must provide all interested parties opportunity for the submission and consideration of facts and arguments, and hearing and decision on notice, and must allow a party to submit rebuttal evidence as may be required for a full and true disclosure of the facts. But that's all the description of what went wrong, not a prescription for what must be done on remand. All... What went wrong is, and if you don't do that and you rely on stuff, that decision can't stand. Does that... Did it go further and say... No, Your Honor. Okay. No, Your Honor. I want to be fully up front. I do not have a case. I get the policy point. Yes. But tell me why it's wrong to think it is obvious that there is an efficiency versus... Efficiency and expedition versus completeness trade-off. That's a trade-off that we don't get to make, that the PTO, whether it's the director or individual board panels get to make. And so that's where this stands. The board made that choice here. Yep. I roughly agree with your characterization. And I am not here to say that this court has ever adopted a rule that prescribes any sort of weight, weighting within that choice. I am here to ask you today, I think Dell v. Acceleron I was an interesting vanguard of a case in the sense that it was one of the first to come out and go back on remand. Since Dell v. Acceleron I has come out, I think that when the context is that the board is exploring new material, the right procedure in that balance that you're speaking of is to take additional material. I don't have any language of a case that this court has issued that says that they must. The closest comes is the SAS case when it instructs on page 9... Excuse me. But you started by saying when the board is considering new material, they must take evidence. But doesn't the board have the right to decide in the first instance whether it should consider new material at all? Yes, Your Honor. If I said must, I didn't. They erred in considering new material in the last time this case was up in front of us. They erred. They considered a portion of the reference that had not been cited or ever articulated as disclosing caddies. It's up to them. If they had gone back and decided we're going to have a do-over here and let you cite it, I probably would have been fine with that. They decided we're not going to let you have a do-over. Why am I not probably fine with that also? Why would I ever put myself in the mess of taking over the lower tribunal's discretion to conduct its proceedings how it sees fit? Your Honor, I think that Judge Toronto said it correctly. I think there is a balance here. Why would I be the person to decide that balance as an appellate tribunal? Aren't I limited to did they abuse their discretion? Did they act arbitrarily and capriciously, which is an incredibly deferential standard? Isn't that the review standard I apply? Yes, under the APA, it is an abuse of discretion standard. But in each of the cases that have cited Dell, the problems with the procedures that you've identified have been remanded, and so there has been guidance from the court on what to do. They have never said must, but they have said in the SAS decision that it was free to adopt a new construction. It was not error to adopt a new construction. And in the Ray Nuvasive, this court specifically said that pivoting to the new portion of Mickelson was not error. And in the Genzyme versus Biomarin case, this court said it paid— Yes, but the fact that it wouldn't be erroneous for them to do something doesn't mean that we have the right to order them to do it in all circumstances. Your Honor, I don't—I think that that is an appropriate deference, but I believe that in the case where there has been a finding of invalidity, the claim was found invalid, a finding that has never been shown to be wrong, the public policy warrants a remand that adds to the record, that examines that information to benefit the public in getting rid of invalid patents. I don't believe that this incumbents on the processes of the PTAB are a problem. Otherwise, why is it in the case of SAS, this court said the board was free to adopt it, and in the remand it said take evidence on the new construction. Suppose that when I was on this case last time, I thought you should lose on the Caddy's point. Suppose that I evaluated the merits and thought you should lose, but at the end of the day I ended up going along with an opinion that instead said it wasn't reached below. Why in the world would I want to force the board to go through a whole new additional process of evaluating this case on the merits? Why would I want to force them to do that when in fact it might have been wrong on the merits? Why would I force them as a matter of process? You're acting as though we have allowed an invalid claim. We rendered no decision on the validity of that claim. So you're acting as though we must tell them to do this because the claim has been adjudicated invalid. Yet it actually hasn't been. So why in the world would I interfere with trial practice for the policy reason you're suggesting? And can't you just bring another IPR or anyone else bring another IPR and properly cite this portion of the reference? Your Honor. Couldn't the board even re-examine of its own accord, sua sponte, that the PTO could re-examine this patent on the basis of these records? Aren't there a million possible remedies short of me ordering the PTO to conduct its practice the way I think fit based on your belief that this claim is invalid? Your Honor, I don't disagree with any of that. I am arguing for a policy distinction where I believe that once evidence is in and there has been a final written decision based on that evidence, that it makes more sense for the board to conduct a remand proceeding that takes that into account and makes the determination that you've asked for. I think it makes more sense doesn't rise to the level of an abuse of discretion. Even the way you frame it under the best of circumstances for you, you don't meet the standard that you have to face on appeal. Well, if that's true, then the language in Nuvasiv and in SAS where there is an allusion to additional evidence, take additional evidence, take the submission of arguments, take the submission of cross-examination, those were fairly close to directions. And those were exactly the same facts in the sense that we had a new construction and we have a pivot to a new reference. I guess I just don't interpret those cases the way you do. I interpret those cases of providing the PTO with the options that it has available to it, but not any sort of mandate. And certainly if they did provide a mandate, we would absolutely have an inconsistency here between the cases. I understand. I'm going to reserve some time. Thank you. Mr. Crane. Thank you. May it please the court. I don't know that I can really add much to the discussion that has already ensued. I think that the court's opinion in the first instance back to the PTAB was absolutely correct, giving pinpoint precision to this court's Ariosa decision that it was not directing the PTAB to take any new evidence or to conduct any additional briefing. Certainly it could have, correct? It could have. The PTO, the other cases, SAS and Nuvasiv, clearly allow the agency to go back and do that. So is there any reason to think the PTAB couldn't have done that? No, that's a great point. In fact, if the PTAB was going to continue to rely upon the evidence that was introduced for the first time at the oral argument, then I understand this court's first opinion to say that Acceleron was entitled to the opportunity to respond. So had the PTAB chosen to waive its rules, and it would have had to go through a procedure for that, to waive its rules that say that you cannot bring new arguments in the oral argument or even in the reply. Go through a procedure? Sorry? Go through a procedure, couldn't it have said in the May remand order, we are going to waive our rules, please address that little slide thing in the hip figure? And that's what I mean. It would have had to have given notice to Acceleron that it's going to waive its rules. So to the extent that Acceleron wants to take issue with that, they would at least have opportunity to raise that point just from a procedural basis. So Judge Moore, to answer your question, I believe the PTAB absolutely could have chosen to waive its rule, consider that information, and consistent with this court's first opinion, it would have given Acceleron an opportunity to respond to that. And even if I believe that he has all of the policy exactly right, that in a case like this where a cloud has been cast over this patent and its claims, because there is at least an initial decision vacated not on the merits but only on procedural grounds, an initial decision which invalidated these claims. So there's clearly a cloud that will now follow this patent, because you have a tribunal that invalidated them, which was reversed, not on the merits but only on procedural grounds. So in light of that, isn't it in everyone's best interest, both the public's, to know if this is in fact technology that's freely available, as well as even the patentee, so you don't end up in a Walker Process fraud claim asserting claims you know to be invalid. What happens then? You're going to end up in a world hurt. Don't you want this resolved? I mean, isn't that in everybody's best interest? I know it's technically not. I get why your client wouldn't want it, but it's kind of hard for you to stand there and say that part, because it doesn't sound good. So isn't it in everybody's best interest from a policy perspective that the PTO, when they have actually invalidated something on the merits, and it's only a procedural issue like this, that they go back and open it back up? Well, I'm not sure that's the only policy involved here. I mean, to the extent that there is a procedural issue, we did address the substance of that when we were here the first time, so we do clearly disagree with the merits of that. But there's a competing policy, too. Is it appropriate for a party to keep bringing up arguments after time and for them to continue to be considered? If that's the case, if I'm a petitioner, I might continue to bring up arguments in my reply and even an oral argument in hopes that perhaps those arguments may be considered. And if they possibly have merit, if I didn't get it right in the petition, then maybe I'll bring it later. And if I have success, then there's an incentive to do that. And I think this court's, I won't pronounce this right, Waseca case that came out the day after our brief was filed, I think speaks to this, that shifting arguments that come out, there's a policy issue there that you shouldn't be a moving target. So I appreciate the concern. I mean, on the merits, Acceleron strongly disagrees with the merits of that issue and doesn't believe that there is, in fact, a clout. And if that issue ever comes up, it will be addressed. If this court sends it back, then we'll certainly address it. But I do believe that there are valid, strong competing policy concerns on the flip side of that. And couldn't it also be that perhaps, I mean, you alluded to this, but didn't say it explicitly, couldn't the PTO have made a judgment in this case? They would have had access to your briefs. You did argue the caddy's point on appeal on the merits, in addition to arguing the procedural and propriety point of no notice. Couldn't the PTO have looked at all of that material and made an assessment? Well, we don't want to reopen this one for new evidence. You know what, we're not sure we got it right the first time in light of your response. Isn't it possible that they could have done something along those lines and that that would really be a reason why we should leave it to them to exercise the discretion? I think that's absolutely correct. I think they certainly could have done that. So I think that this court did not issue a mandate to really get involved. And I wrote it down. I think that there was a question from the court that essentially getting involved and putting itself, this court putting itself in the shoes of the lower tribunal to direct its procedure. I think it makes more sense for that tribunal that knows its policies and is under its statutes and its goals to effectuate those to the best of its understanding of them. And if it gets them incorrect, well, then they come here. But that's not the role of this court to get involved in that. And otherwise telling it that, well, if there was an error that needs to be reversed and there was abuse of discretion, then in that instance they would go back into the understanding or to the correctness of that court's understanding of its own procedures and rules. So I think we're in agreement on that. I think this court's Ariosa decision gives great guidance there as well. What this court said, we've talked about that. We've talked about the waiver. To that point, unless there's any further questions, I think that's it. Thank you, Mr. Crane. Mr. Meek has some rebuttal time. He only has 48 seconds left. Give him a few minutes. Thank you, Your Honor. I do think that it is true that this court has not given a compulsory direction to the PTAB in the past in this context. But I do think that it is inconsistent with the deference that is being argued by Acceleron. The language of the SAS case when this court stated the board to examine the construction in the first instance after hearing from the parties on the new construction. Does the PTAB have the ability in view of that language to not hear from the parties? Another example, the Rovalmo v. Bowler-Edstall case, when it says at 1029, give the patent owner an opportunity for the submission and consideration of facts and arguments and permit the patent owner to submit rebuttal evidence. Is that permissive? Yes. I think you probably could read it that way. But is it consistent that the PTAB would go forth and say, I am taking my authority and not giving the patent owner that opportunity? Finally, the context of the colloquy at the PTAB hearing involved me, Mr. Crane, and the panel. It was not a submission of new material as in Waseca. Waseca was the attempt to provide new evidence. The submission, the colloquy involved one of the PTAB judges becoming uncomfortable with the application of a construction. It was his own idea. This was the original oral hearing. Yes, the original oral hearing. Judge Gianetti became uncomfortable with the construction of one of the terms and pivoted to a new portion of the reference because of his discomfort with the construction. We resisted that effort, but that was the basis of the first written decision. The public policy of making sure that I don't try to sneak something in was not in play. The relevant public policy is not to prevent sneakiness. It's to prevent adverse results from lack of notice. It's focused on him, not on you. It is, but I do believe the cases can be divided into Waseca, where the petitioner tries to, during the reply and after the reply, put in a new grounds of obviousness versus allowing Judge Gianetti to do his job and pivot it if he wants to, which this court in in re nuvasive said is okay. You said in in re nuvasive that that is permitted, and in the Genzyme case you said, the introduction of new material and new ideas and new evidence during the course of a trial is to be expected. So yes, the PTAB has not been ordered by this court to do it, but the language that you've given these remands is pretty strong, and it would be unusual for them to ignore it. Thank you for your time today. I appreciate it. I thank both counsel. The case is taken under submission.